UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JENKEL, | |
|     Petitioner, | No. C 06-2593 MHP |
|     v. | **MEMORANDUM & ORDER** |
| CITY AND COUNTY OF SAN FRANCISCO, | **Re: Respondents' Motion to Dismiss** |
|     Respondent, | |
| HONORABLE AARON PESKIN, | |
|     Real Party in Interest #1, | |
| HONORABLE CHRIS DALY, | |
|     Real Party in Interest #2, | |
| HONORABLE NANCY PELOSI, | |
|     Real Party in Interest #3, | |
| HONORABLE BRUCE MCPHERSON, | |
|     Real Party in Interest #4, | |
| JOHN ARNTZ, | |
|     Real Party in Interest #5, | |
| DUF SUNDHEIM, | |
|     Real Party in Interest #6. | |

On March 8, 2006, petitioner John Jenkel, proceeding pro se, filed a petition for writ of mandate for extraordinary relief (the "Petition") against respondent, City and County of San Francisco (the "City"), and three real parties in interest, alleging violations of the Ralph M. Brown Act (the "Brown Act") under California Government Code sections 54950, et seq, violations of 18

1  U.S.C. section 241, and violations of California Penal Code section 37. On March 23, 2006,
2  petitioner added three additional real parties in interest by filing an amended petition for writ of
3  mandate for extraordinary relief (the "Amended Petition"). The case was then removed to federal
4  court pursuant to 28 U.S.C. section 1442(a)(1). Now before the court is a motion to dismiss under
5  Federal Rule of Civil Procedure 12(b)(6), filed by a number of parties in interest or, in the
6  alternative, a motion to strike pursuant to Rule 12(f). Also before the court is Congresswoman
7  Nancy Pelosi's motion to dismiss under Rule 12(b)(1) or, in the alternative, under Rule 12(b)(6).
8        Having considered the parties' arguments and submissions, and for the reasons set forth
9  below, the court enters the following memorandum and order.

BACKGROUND[1]

      Petitioner, in pro se, filed a writ of mandate for extraordinary relief against the City and County of San Francisco, referencing Aaron Peskin, Chris Daly, and Nancy Pelosi, as real parties in interest #1, #2, and #3, in San Francisco Superior Court on March 8, 2006. On March 23, 2006, petitioner filed an Amended Petition, adding Bruce McPherson, John Arntz, and Duf Sundheim, as additional real parties in interest, #4, #5, and #6. Notice of Removal, Exh. B.[2] In his largely incomprehensible writ, filed March 8, 2006 in Superior Court, petitioner contends that there is a vast conspiracy orchestrated by various government entities surrounding the September 11, 2001 attacks ("9-11 attacks") and the Iraq war. Willie Brown, former mayor of San Francisco, the Central Intelligence Agency ("CIA"), the Enron Corporation ("Enron"), Osama Bin Laden, Al Qaeda, Halliburton, Bechtel Corporation ("Bechtel"), URS Corporation ("URS"), Vice President Cheney, and President Bush are all alleged participants in this conspiracy. According to petitioner, the CIA and Enron funded Osama Bin Laden and Al Qaeda, and Enron "probably sponsored the" 9-11 attacks, and the Iraqi war provides "corporate welfare for" Bechtel, URS, and Halliburton. However, none of these individuals or entities is named. Instead, petitioner sued the City and County of San Francisco, basing his petition on (1) the alleged wrongful refusal to hear public comment on a resolution adopted by the San Francisco Board of Supervisors in violation of the

UNITED STATES DISTRICT COURT
For the Northern District of California

Brown Act; (2) a violation of 18 U.S.C. section 241; and (3) a violation of California Penal Code section 37. Notice of Removal, Exh. A. Specifically, petitioner contends that the City, Board President Peskin, and Supervisor Daly violated the Brown Act, section 241, and section 37, by refusing to hear public comment on Resolution 109-06, which ultimately passed on February 28, 2006, calling "for a full investigation, impeachment or resignation of President George W. Bush and Vice President Richard B. Cheney." Respondents' Request for Judicial Notice in Support of Motion to Dismiss Pursuant to FED. R. CIV. PRO.12(b)(6) (hereinafter "RJN"), Exh. B.[3]

In the Amended Petition, Jenkel incorporates by reference all of the allegations in the Petition and further alleges that he was wrongfully omitted as a Republican candidate for United States Representative in California's Eighth District from the June 6, 2006 primary ballot, in violation of the Brown Act, section 241, and section 37. Amended Petition ¶ 24.

Petitioner's objections to Congresswoman Pelosi's actions relate to two votes cast in the House of Representatives: (1) a decision to vote against House Resolution 571 on November 18, 2005, which petitioner claims "prolonged a clearly optional conflict . . . wherein the United States government is disgustingly using deadly force without due process of a declaration of war;" and (2) a vote for "House Roll Call 608 to continue to aid and coverup the taking of life without due process of a declaration of war." Petition ¶ 10.

In his prayers for relief, petitioner requests that the court issue writs of mandate: (1) compelling the City to rehear any public comment denied at the February 28, 2006, board meeting; (2) declaring various acts by the Board null and void; (3) compelling the City to introduce and consider various resolutions supported by petitioner; (4) compelling Supervisor Daly to support a resolution supported by Board President Peskin; (5) compelling the City to hold a special meeting to consider these resolutions; (6) compelling the City to urge Congresswoman Pelosi to introduce a resolution in the House of Representatives denouncing the Iraqi war; (7) barring the City from controlling public comment in the future; (8) compelling the City to start public comment at Board Meetings at 5 p.m. for the convenience of interested parties; (9) compelling the City to add petitioner

3

1  to the June 6, 2006 ballot; (10) compelling Director Arntz to send letters to the citizens of San
2  Francisco apologizing for the omission.
3      On April 17, 2006 Congresswoman Pelosi removed this action to this court pursuant to 28
4  U.S.C. sections 1446 and 1442(a)(1), accompanied with a motion to dismiss pursuant to Rules
5  12(b)(1) and 12(b)(6).  On April 18, 2006,  Aaron Peskin, Chris Daly, and John Arntz (the "City
6  respondents") filed a motion to dismiss pursuant to Rule 12(b)(6) and a motion to strike pursuant to
7  Rule 12(f).  Petitioner failed to file an opposition, but instead on May 9, 2006, filed a petition for
8  reconsideration contending that the removal petition is defective and requesting that the court
9  rescind its grant to Congresswoman Pelosi for leave to file a motion to dismiss on April 26, 2006.
10 Furthermore petitioner demands that the court strike any references that allow the court to consider
11 the matter or the pleadings on the papers, without the opportunity for an oral hearing.

### LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court may [typically] look only at the face of the complaint to decide a motion to dismiss."  Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987), cert. denied, 484 U.S. 944 (1987).  In addition, pursuant to Federal Rule of Evidence 201, "a court may take judicial notice of 'matters of public record'" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001) (quoting Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

In the case of a pro se plaintiff, the court is to construe the complaint with even greater liberality than it would formally drafted pleadings. Hughes v. Rowe, 449 U.S. 5, 9 (1980).

DISCUSSION

I.   Petition for Reconsideration

In lieu of an opposition to respondents' motion to dismiss, petitioner moves for reconsideration of this court's order filed April 26, 2006, granting leave to file a motion to dismiss to respondent Nancy Pelosi. In his motion for reconsideration, petitioner argues that the case is improperly removed to federal court because there has been no notice or petition for removal. As discussed infra, this claim has no merit. Also, petitioner argues that the state court action was a mandamus action and cannot be heard in federal court, as mandamus in federal court has been abolished under Federal Rule of Civil Procedure 81(b). Accordingly, petitioner argues that the court should void the order granting leave to file a motion to dismiss.

Motions for reconsideration should not be frequently made or freely granted. They are not a substitute for appeal or a means of attacking some perceived error of the court. See Twentieth Century - Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1980). Jurisdictional defects and frivolous or meritless claims cannot be remedied by merely making a motion for

5

1  reconsideration. United States v. Hetrick, 644 F.2d 759 (9th Cir. 1980). "'[T]he major grounds that
2  justify reconsideration involve an intervening change of controlling law, the availability of new
3  evidence, or the need to correct a clear error or prevent manifest injustice.'" Pyramid Lake Paiute
4  Tribe of Indians v. Hodel, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting United States v. Desert
5  Gold Mining Co., 433 F.2d 713, 715 (9th Cir. 1970)).

6      Petitioner has not alleged that any of the foregoing grounds for reconsideration are
7  applicable. Rather his motion for reconsideration is predicated on the misconception that the
8  removal petition is defective and because the court decided to submit the matter on the papers.
9  Petitioner has not made the threshold showing that entitles him to any relief. Accordingly, the
10 motion for reconsideration is denied. However, to the extent that the papers relating to
11 reconsideration respond to defendants' motion to dismiss, the court will address the response.
12
13 II.    Removal to Federal Court
14     Petitioner alleges that the case is improperly removed to federal court because he filed an
15 action in mandamus, which has been abolished under Federal Rule of Civil Procedure 81(b). See
16 Santa Margarita Mutual Water Co. v. State Water Rights Bd. of the State of CA, 165 F. Supp. 870,
17 873 (S.D. Cal. 1958) (district courts have "no original jurisdiction in mandamus."). However, if
18 there is a legitimate basis to support removal to federal court, then this court would have jurisdiction
19 to hear a case involving a "California mandamus action." See, e.g., People ex re. Lockyer v. County
20 of Santa Cruz, 416 F. Supp. 2d 797, 799 (N.D. Cal. 2006) (quoting Manufactured Home
21 Communities v. City of San Jose, 420 F.3d 1022, 1027 n.6 (9th Cir. 2005)) (where the court found
22 that a "claim involving federal constitutional rights may be joined to a California mandamus
23 action.").
24     Congresswoman Pelosi moved to remove the proceeding from state court pursuant to 28
25 U.S.C. sections 1446 and 1442(a)(1). Section 1442 covers the removal of civil or criminal
26 proceedings against persons and agencies of the United States for acts done under "color of office."
27 28 U.S.C. § 1442(a). Petitioner's grievances against Congresswoman Pelosi pertain to two votes she
28

UNITED STATES DISTRICT COURT
For the Northern District of California

cast in the House of Representatives. As an officer of the United States government, Congresswoman Pelosi's actions on the floor of Congress relate to her status as a government official and the claims against her arise out of alleged actions taken by her in her official capacity. Under Section 1442(a)(1), there is sufficient grounds for federal jurisdiction under which the mandamus action was brought to this court. Removal was thus proper and the court has jurisdiction to hear the case.

III.   Motion to Dismiss

    A.   <u>Claims Against City Respondents</u>[4]

As a preliminary matter, it is of note that petitioner has filed no opposition to City respondents' motion to dismiss. Even treating petitioner's motion for reconsideration as an opposition it fails to refute any of the allegations raised by City respondents. In any event, the Court will discuss the merits of the City respondents' motion to dismiss below.

City respondents make a number of arguments in support of their motion to dismiss for failure to state a cause of action. First, City respondents contend that there was no violation of the Brown Act because the public had an opportunity to comment at an earlier hearing and the resolution did not substantially change between that hearing and the hearing on February 28, 2006. Second, petitioner's omission from the June 6, 2006 primary ballot was proper because his nomination papers lacked the requisite number of valid signatures. Finally, City respondents argue that as a matter of law, section 241 and section 37 cannot provide a basis for civil liability. Thus, City respondents contend, the court should dismiss petitioner's complaint with prejudice on grounds of futility.

       1.   <u>There is no violation of the Brown Act</u>

"The Brown Act . . . provides for open meetings for local legislative bodies such as city councils, boards of supervisors and school boards." <u>San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.</u>, 2006 Cal. App. LEXIS 801, at

7

*97 (Cal. Ct. App. May 26, 2006). The Brown Act is designed to encourage public participation in government decision-making by requiring public agencies to conduct proceedings openly to allow the opportunity for public feedback. See <u>Bell v. Vista Unified School Dist.</u>, 82 Cal. App. 4th 672, 681 (2000); <u>see also</u> <u>Cohan v. City of Thousand Oaks</u>, 30 Cal. App. 4th 547, 555 (1994). A Board of County Supervisors is required to allow members of the public to address it before or during the consideration of an agenda item. See <u>Coalition of Labor v. County of Santa Barbara Bd. of Supervisors</u>, 129 Cal. App. 4th 205, 209–210 (2005). However, public tribunals do not have to hear public comment on matters outside its subject matter jurisdiction or where there has been a prior opportunity for public comment. See <u>White v. City of Norwalk</u>, 900 F.2d 1421, 1425 (9th Cir. 1990) (holding that the City Council may restrict "public speakers to the subject at hand"). The

> agenda need not provide an opportunity for members of the public to address the legislative body on any item that has already been considered by a committee, composed exclusively of members of the legislative body, at a public meeting *wherein all interested members of the public were afforded the opportunity to address the committee, before or during the committee's consideration of the item*, unless the item has been substantially changed since the committee heard the item, as determined by the legislative body.

Cal. Gov. Code § 54954.3(a) (emphasis added).

In the present action, as noted in the Master Report of the Legislative File for Resolution 109-06, the Board of Supervisors for the City referred the resolution to the Government Audit and Oversight Committee on February 7, 2006, which was subsequently transferred to the Rules Committee on February 16, 2006. <u>See</u> RJN, Exh. A. The Rules Committee, comprised of three members of the Board, provided an opportunity for public comment on the resolution 109-06 at the February 16, 2006 meeting. <u>Id.</u> From the time of the public meeting on February 16, 2006 to its eventual adoption at the February 28, 2006 general meeting of the Board of Supervisors, the resolution underwent one change, which involved the deletion of the phase, "while focusing on taking back the United States House of Representatives and United States Senate." <u>See</u> RJN, Exhs. A, B.

It is evident that the public has had the requisite opportunity, prescribed under California Government Code section 54954.3(a), to comment on the resolution when it appeared before the

8

1  Rules Committee on February 16, 2006, and the resolution did not substantially change from the
2  time of that hearing to its eventual adoption on February 28, 2006.  Therefore the Board was not
3  required to allow public comment on resolution 109-06 during its February 28, 2006 meeting and the
4  petitioner fails to sustain a cause of action under the Brown Act.  See Cal. Gov. Code § 54954.3(a).

2.  Petitioner's omission from the June 6, 2006 ballot was proper

In his amended petition, petitioner claims that the City and Director Arntz wrongfully withheld his name as a Republican candidate for U.S. Representative in California's Eighth District from the June 6, 2006 ballot.  See Amended Petition ¶ 24.  An application for a writ of mandate must be denied where the petitioner does not appear to have received a sufficient number of signatures to equal the number required for the nomination petition.  See People ex rel. Jones v. Zemansky, 178 Cal. 803, 804 (1918).  In California, to qualify for the ballot for the House of Representatives in Congress, an applicant is required to submit "[n]omination papers signed by signers pursuant to Section 8041."  Cal. Elec. Code § 8020(a)(2).  An applicant is required to garner "not less than 40 nor more than 60," signatures on his/her nomination papers.  Id. § 8062(a)(2).  "Signers shall be voters in the district or political subdivision in which the candidate is to be voted on and shall be affiliated with the party, if any, in which the nomination is proposed."  Id. § 8068.

This signature requirement is an important one.  A nomination document is scrutinized by county election officials in a bid to "verify the signatures and political affiliations of the signers of the nomination paper with the registration affidavits on file in the office of the county elections official."  Cal. Elec. Code § 8081.  If the signature on the nomination paper does not match the registration affidavit, "[t]he county elections official shall mark" that signature as "'insufficient.'"  Id.  Furthermore, "the elections official shall determine that the residence address on the petition or paper is the same as the residence address on the affidavit of registration."  Id. § 105.  If the addresses are different or the nomination paper does not contain a residence address, "the affected signature shall not be counted as valid."  Id.  A mailing address is considered insufficient as it provides no information as to the physical location of the person or "whether the signer was a

9

qualified registered voter *at the time of signing*." Mapstead v. Anchundo, 63 Cal. App. 4th 246, 262 (1998).

     Petitioner submitted the required payment to the Secretary of State to qualify for his nomination petition. See Amended Petition, Exh. B. While petitioner's nomination papers included 46 signatures, Director Arntz only certified two valid signatures that could count towards the 40 signatures required for placement on the ballot. See Cal. Elec. Code § 8062(a)(2). Approximately 23 of the signatures were rejected because the signers were not registered voters as required by section 8068. Of the remaining 21 signatures, two were rejected because the signers listed a mailing address and not the required residence address; four signatures were rejected because the residence address on the nomination papers did not match the address on the affidavit of registration; five signatures were rejected because the individuals did not reside in the Eighth District; nine additional signatures were thrown out because the signers were not affiliated with the Republican party; and the last signature was rejected because it did not match the signature on the affidavit of registration. See Cal. Elec. Code §§ 105, 8068.

     Petitioner contests the rejection of the 23 signatures that were thrown out because the signers were not registered voters. See Amended Petition ¶ 22. He claims that he registered over six of the 23 and suspects that there might be foul play, however he presents no evidence to validate his suspicions. Id. Moreover, even if the contested 23 signatures were permitted to count alongside the two valid signatures, this would still fall short of the required minimum of 40 signatures necessary to be placed on the ballot for House of Representatives in Congress. See Cal. Elec. Code § 8062(a)(2). By his own accounts, petitioner failed to gain the required number of signatures because "none of the 44 valid signers to petitioner's 2001 Nomination Petitions . . . as a candidate for the same public office in 2001, would sign Petition[er]'s Nomination Petition for potential candidate in 2006." Amended Petition ¶ 18. Since petitioner failed to meet the statutorily prescribed guidelines for nomination papers, his exclusion from the June 6, ballot by the City and Director Arntz was proper. Respondents are entitled to dismissal of this claim.

10

### 3.  18 U.S.C. section 241

Respondents contend that petitioner's allegations that City respondents and Congresswoman Pelosi conspired with each other and "certain domestic enemies to coverup mass murder and conspired against the constitutional rights of Petitioner and others" in violation of section 241 fails as a matter of law. See Petition ¶¶ 9–11.

Section 241 criminalizes a conspiracy to interfere with the exercise of a federal right, and has been labeled the "criminal counterpart of [42 U.S.C.] § 1985," which addresses conspiracies to interfere with civil rights. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 275 (1993). The Ninth Circuit has held, however, that these criminal provisions provide "no basis for civil liability." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (quoting Agnew v. City of Compton, 239 F.2d 226, 230 (9th Cir. 1956), cert. denied 353 U.S. 959 (1957)).

Petitioner cannot sustain a valid claim under section 241 and his claim is dismissed without leave to amend.

### 4.  California Penal Code section 37

Similarly, respondents assert that petitioner is unable to sustain a claim under section 37. Petitioner alleges that City respondents and Congresswoman Pelosi's actions in support of the Iraqi war amount to treason and constitute violations of section 37 of the California Penal Code and should render them eligible for the death penalty. See Petition ¶ 12. Section 37 states in relevant part that "[t]reason against this state consists only in levying war against it, adhering to its enemies, or giving them aid and comfort, and can be committed only by persons owing allegiance to the state." Cal. Penal Code § 37(a). The California Supreme Court has ruled that, "a statute that provides for a criminal proceeding only does not create a civil liability; if there is no provision for a remedy by civil action to persons injured by a breach of the statute it is because the Legislature did not contemplate one." Nowlon v. Koram Ins. Center, Inc., 1 Cal. App. 4th 1437, 1444–1445 (1991) (quoting Clinkscales v. Carver, 22 Cal. 2d. 72, 75 (1943)).

11

1    The California Legislature did not provide a civil remedy under section 37 and thus
2    petitioner's claims are dismissed without leave to amend.

### B.    Claims against Congresswoman Nancy Pelosi[5]

As this court has already held that the plaintiff cannot sustain his claims under section 241 and section 37, his claims under these sections against the Congresswoman are also dismissed.

Moreover, the source of petitioner's grievances against Congresswoman Pelosi stems from two votes cast in the House of Representatives. The Speech or Debate Clause protects members of Congress from having their actions on the House floor reexamined in a different forum or setting. See U.S. Const. art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other place."). "The Speech or Debate Clause prohibits inquiry only into those things generally said or done in the House or Senate in the performance of official duties and into the motivation of those acts." United States v. Helstoski, 442 U.S. 477, 488 (1979) (quoting United States v. Brewster, 408 U.S. 501, 512 (1972)). The scope of the Speech or Debate Clause extends to the "act of voting." Gravel v. United States, 408 U.S. 606, 617 (1972). Given the foregoing, all claims against Congresswoman Pelosi are dismissed for failure to state a claim.

## IV.    Leave to Amend

The Federal Rules of Civil Procedure provide that leave to amend be "freely given when justice so requires." FED. R. CIV. PRO.15(a). The Ninth Circuit has construed this broadly, requiring that leave to amend be granted with "extraordinary liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). In determining whether it should grant leave to amend a complaint, the court must consider (1) the plaintiff's bad faith; (2) undue delay; (3) prejudice to the defendant; (4) futility of amendment; and (5) whether the plaintiff has previously amended his or her pleadings. Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) (citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)), reh'g and reh'g en banc denied, 375 F.3d 810 (9th Cir.

2004), cert. denied., 543 U.S. 1188 (2005).  Futility alone can justify the denial of a motion to amend.  Bonin, 59 F.3d at 845.  Petitioner's claims fail as a matter of law and it would be futile to allow him leave to amend.  Thus, the court denies petitioner leave to amend his claims.[6]

V.   Summary

In summary, this court finds that City respondents did not violate the Brown Act by not hearing public comment at the February 28, 2006 meeting because (1) the public had an opportunity to comment at an earlier hearing and (2) the resolution did not substantially change from that time. Petitioner's omission from the June 6, 2006 primary ballot as a Republican candidate for United States Representative in California's Eighth District was proper since his nomination petition lacked the requisite number of signatures.  Petitioner cannot pursue claims under 18 U.S.C. section 241 or California Penal Code section 37, since these are both criminal statutes that provide no basis for civil liability.  Lastly, petitioner's separate claims against Congresswoman Pelosi are similarly barred under Federal Rule of Civil Procedure 12(b)(6).

CONCLUSION

For the foregoing reasons, the court hereby GRANTS City respondents' motion to dismiss. The court GRANTS Congresswoman Pelosi's motion to dismiss.  The court DENIES petitioner's motion for reconsideration.  The action is DISMISSED in its entirety with prejudice.  The clerk shall close the file.

IT IS SO ORDERED.

Dated: July 21, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

13

# **ENDNOTES**

1. Unless otherwise specified, background facts are taken from petitioner's Petition and Amended Petition, and are assumed to be true for purposes of this motion only.

2. Petitioner also submitted a declaration in support of his petition for writ of mandate for extraordinary relief ("Declaration") reiterating many of the same grievances outlined in the Petition. The Declaration also contains a number of exhibits, including a section outlining the case of Mary E. Morrison, but it is unclear how this case and many of the other attachments are connected to petitioner's own claims.

3. The court grants City respondents' request for judicial notice of the following documents: Master Report from the Legislative File for Resolution 109-06; Resolution 109-06, as amended and passed by the San Francisco Board of Supervisors on February 28, 2006; the web page for the Rules Committee of the San Francisco Board of Supervisors; and the official agenda for the regular meeting conducted by the San Francisco Board of Supervisors on February 28, 2006, as obtained from the web site for the San Francisco Board of Supervisors.

4. As City respondents' motion to dismiss under Rule 12(b)(6) is dispositive, the court need not reach the issue of whether to grant City respondents' motion to strike under Rule 12(f).

5. As Congresswoman Pelosi's motion to dismiss under Rule 12(b)(6) is dispositive, the court need not reach the issue of whether to grant Congresswoman Pelosi's motion to dismiss under Rule 12(b)(1).

6. It is not clear that plaintiff would have standing to raise the issues he attempts to raise even if the issues had some merit. Plaintiff's papers indicate that he is a resident of Sebastopol, California, which is located fifty miles north of San Francisco in the County of Sonoma. He complains of actions of the Board of Supervisors for the City and County of San Francisco. It would appear that plaintiff is not a resident of the City and County of San Francisco and, if he is not, it is doubtful that he could establish standing to challenge actions of the San Francisco government. It is doubtful given the nature of his claims, even if viable, that plaintiff could establish a personal stake in the proceedings of the San Francisco Board of Supervisors such that he could show he suffered an injury "fairly traceable" to the Board's actions. See, e.g., Baker v. Carr, 369 U.S. 186 (1961).

   With respect to his claim that he was wrongfully omitted from the ballot for the Eighth Congressional District, that is also dubious, since if he is a resident of Sonoma County he is not a resident within the Eighth District which covers only four-fifths of San Francisco. That also means that he does not live within the District of the Congresswoman whom he has sued, raising the question of whether he may bring a claim based upon the actions of a Congressional representative who does not represent him. These questions may be interesting, but they are academic since plaintiff's claims wholly fail for a variety of reasons as stated above.